# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D2023-0760
_____

CARISSA PARKER,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____


On appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

January 2, 2025

ON MOTION FOR REHEARING

BILBREY, J.

   We grant Carissa Parker's motion for rehearing, withdraw our opinion issued October 30, 2024, and substitute the following opinion.

   Parker appeals her sentence imposed after she entered a plea of no contest to second-degree murder with a firearm. As explained below, we affirm the term-of-years sentence but reverse certain conditions of probation imposed by the trial court.

   The State alleged, and in her plea Parker did not contest, that Parker planned and facilitated the killing of Edgar Jennings. Jennings was the father of Parker's young daughter. Parker hired Jordan Phillips to carry out the murder. Phillips did so by shooting

Jennings while Jennings was in the yard of the home where he lived with the daughter. On the night of the murder, the daughter was in the home but slept through the incident.

Although initially charged with first degree murder, as part of the plea agreement Parker entered a plea to second degree murder with a firearm. The agreement did not specify the sentence, only noting that a 25-year mandatory minimum sentence was required, and a life sentence was possible. *See* § 775.087(2)(a)3., Fla. Stat. (2019).

After accepting Parker's plea, the trial court conducted a sentencing hearing. The trial court heard testimony as well as argument of counsel before it sentenced Parker to 53 years' incarceration to be followed by probation for life. At the hearing, Parker did not object to the sentence or sentencing process. Parker then filed this appeal.

Parker subsequently filed a motion to correct sentencing error under rule 3.800(b)(2), Florida Rules of Criminal Procedure, in which Parker argued that the sentence was erroneous.[1] Parker claimed that the court relied on an improper factor in her sentence by considering the sentence and relative culpability of the shooter, Phillips. According to Parker, the 53-year sentence based on this improper consideration deprived her of her right to an individualized sentencing determination. Parker also argued in her motion that four of the special conditions of probation imposed by the trial court were invalid.

On appeal, Parker claims that in imposing a 53-year prison sentence, the trial court deprived her of individualized sentencing in violation of the Eighth Amendment, as well as the Due Process Clause and Equal Protection Clause in the Fourteenth Amendment. She also claims violations of the similar protections in the Florida Constitution. *See* Art. I, §§ 2, 9, 17, Fla. Const. But since Parker's claims concern errors in the sentencing process, these claims were not preserved by the rule 3.800(b) motion. *See*

---

[1] The trial court did not rule on the motion within the time provided by rule 3.800(b)(2)(B), and thus the motion was deemed denied.

2

*Jackson v. State*, 983 So. 2d 562, 572 (Fla. 2008) ("[R]ule 3.800(b) is intended to permit defendants to bring to the trial court's attention errors in sentence-related *orders*, not any error in the sentencing process.").[2]

Although unpreserved, the due process claim may be properly before us since a due process violation is fundamental error. *See Cromartie v. State*, 70 So. 3d 559, 563 (Fla. 2011) (citing *Jackson*, 983 So. 2d at 574) ("[W]here there is no contemporaneous objection during a sentencing hearing and where the error does not qualify as a 'sentencing error' that can be raised in a rule 3.800(b) motion, the error can still be considered and remedied on appeal if the error is fundamental."). We are cognizant, however, of *State v. Dortch*, 317 So. 3d 1074 (Fla. 2021), where the Court held that even if a defendant claimed fundamental error occurred, before a defendant could challenge on appeal that the plea was involuntary, the defendant had to first move to withdraw the plea in the trial court.

We need not decide the effect of *Dortch* on whether we can consider Parker's unpreserved due process claim, since no error, much less fundamental error occurred in the sentencing process.[3]

---

[2] Claims challenging the constitutionality of a sentencing statute can be preserved with a rule 3.800(b) motion. Consistent with the holding in *Jackson*, 983 So. 2d at 573, that rule 3.800(b) can be used to allege "that a sentencing statute was unconstitutional," we have allowed motions under rule 3.800(b)(2) to be used to preserve Eighth Amendment claims challenging sentences for crimes committed by juveniles. *See Floyd v. State*, 87 So. 3d 45, 46 (Fla. 1st DCA 2012); *see also Henry v. State*, 175 So. 3d 675, 676 (Fla. 2015) (considering whether sentence violated the Eighth Amendment following rule 3.800(b)(2) motion raised while direct appeal was pending). Equal protection claims challenging the constitutionality of a sentencing statute have also been preserved with a 3.800(b)(2) motion. *See Jackson v. State*, 191 So. 3d 423 (Fla. 2016); *Nezi v. State*, 119 So. 3d 517 (Fla. 5th DCA 2013). Still, Parker's challenge is to the sentencing process, not the constitutionality of any sentencing statute.

[3] Post *Dortch*, other district courts have continued to analyze whether fundamental error occurred in the sentencing process

"We review de novo the constitutionality of a sentence." *Garner v. State*, 382 So. 3d 17, 20 (Fla. 2d DCA 2024) (citations omitted); *see also Garnes v. State*, 382 So. 3d 701 (Fla. 4th DCA 2024) (applying a de novo standard of review to a motion to correct sentencing error). Claims of fundamental error are also subject to de novo review. *State v. Garcia*, 346 So. 3d 581, 585 (Fla. 2022) (citing *Cromartie v. State*, 70 So. 3d 559, 563 (Fla. 2011)).

The transcript of the sentencing hearing establishes that the trial court discussed the circumstances of the murder extensively, including the 40-year sentence imposed on Phillips, the shooter. The court considered various factors, including testimony presented at sentencing and the presentence report. At sentencing, the trial court discussed the comparative roles of Parker in arranging for the murder and Phillips in carrying out the murder. This comparison of relative culpability did not deprive Parker of her right to an individualized sentence determination. *See Schulte v. State*, 325 So. 3d 275 (Fla. 1st DCA 2021) (affirming sentence imposed at joint sentencing hearing for codefendants; trial court discussed aggravating and mitigating factors relating only to the defendant separately from factors applicable to codefendants).

Parker cites *Cruz v. State*, 372 So. 3d 1237, 1241 (Fla. 2023), for her contention that "relative culpability review" is now unconstitutional. But this argument misunderstands how that review was previously conducted by the Florida Supreme Court in death penalty cases. At one time, the Court considered whether a death sentence imposed "is disproportionate in comparison to other cases in which the sentence of death has been imposed." *Lawrence v. State*, 308 So. 3d 544, 548 (Fla. 2020). Yet in *Lawrence* the Court held that the Eighth Amendment does not require "comparative proportionality review" of a death sentence. *Id.*

The opinion in *Cruz* just expanded on *Lawrence* to hold that "our relative culpability review is a corollary of our obsolete comparative proportionality review." *Cruz*, 372 So. 3d at 1244.

following a plea where the alleged error was unpreserved. *See Nelson v. State*, 392 So. 3d 174 (Fla. 5th DCA 2024) (on rehearing); *Wyrich v. State*, 370 So. 3d 1000 (Fla. 2d DCA 2023).

"[R]elative culpability review is neither constitutionally required nor consistent with ensuring that a constitutional capital sentence was rendered." *Id*. at 1245.

That the Florida Supreme Court no longer conducts a relative culpability review in assessing the constitutionality of a capital sentence is unrelated to whether a trial court can consider whether one codefendant is more culpable than another. Culpability of a defendant is a valid sentencing consideration. *See* § 921.002(1)(c), Fla. Stat. (stating that "the circumstances surrounding the primary offense" are a principle contained in the Criminal Punishment Code); *Kight v. State*, 784 So. 2d 396, 401 (Fla. 2001) ("[D]isparate treatment of codefendants is permissible in situations where a particular defendant is more culpable."); *see also Larzelere v. State*, 676 So. 2d 394, 407 (Fla. 1996) (upholding a death sentence for the "dominating force" in the murder even though the actual shooter received a lesser sentence).

Here, the trial court's exhaustive statement before pronouncement of the sentence highlighted the many facts, both mitigating and aggravating, on which the court determined the sentence. The record refutes Parker's claim that the sentencing court failed to conduct an individualized sentencing. *See Bartley v. State*, 303 So. 3d 280, 281–82 (Fla. 1st DCA 2020) (holding that the entirety of court's statement demonstrated consideration of mitigating evidence and nature of crime). The sentence did not violate due process. Parker fails to demonstrate fundamental error or even error in her sentence.

Turning to the special conditions of probation, the State conceded the scrivener's error in special condition 19. This condition required GPS monitoring but omitted the six-month time limit orally pronounced by the sentencing court. The conflict between the oral pronouncement and written order of probation was not known at the sentencing hearing, so it was preserved by Parker's rule 3.800(b) motion. *See Levandoski v. State*, 245 So. 3d 643, 647 (Fla. 2018). The order of probation must be corrected to reflect the court's oral pronouncement.

Likewise, the State agreed that special condition 23, requiring Parker to "complete" her GED or vocational training, must be amended to require only that she "make a good faith effort" to do

5

so. *See* § 948.037(1), Fla. Stat.; *Taylor v. State*, 185 So. 3d 1281 (Fla. 1st DCA 2016). The requirement that Parker "complete" a GED or vocational training is contrary to section 948.037(1), making that special condition illegal and subject to preservation by Parker's rule 3.800 motion. *See Carter v. State*, 786 So. 2d 1173, 1181 (Fla. 2001).

Parker also challenges special conditions 20 and 22 as not "reasonably related to the circumstances of the offense committed and appropriate for the offender" as required by section 948.039, Florida Statutes. These challenges were raised in Parker's rule 3.800(b)(2) motion and were therefore properly preserved. *See Rodriquez-Carmona v. State*, 319 So. 3d 76, 77 (Fla. 1st DCA 2021).[4] Special Condition 20 prohibits any contact between Parker and the victim's family, including the daughter of Parker and the victim Jennings. Special Condition 22 requires Parker to "successfully complete parenting classes."

Prior to the enactment of section 948.039, the Florida Supreme Court held:

> In determining whether a condition of probation is reasonably related to rehabilitation, we believe that a condition is invalid if it (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.

---

[4] The previous opinion held that a rule 3.800 motion could not preserve these claims and cited to *Folsom v. State*, 383 So. 3d 843 (Fla. 1st DCA 2023). As Parker's motion for rehearing correctly points out, *Folsom* involved a motion under rule 3.800(a) that only applies to illegal sentences. 383 So. 3d at 845. The motion filed by Parker here was under rule 3.800(b)(2). In addition to our opinion in *Rodriquez-Carmona*, other district courts have allowed a rule 3.800(b)(2) motion to preserve the claims Parker makes here about special conditions of probation. *See Archer v. State*, 309 So. 3d 287 (Fla. 5th DCA 2020); *Lizano v. State*, 239 So. 3d 714 (Fla. 4th DCA 2018).

*Biller v. State*, 618 So. 2d 734, 734–35 (Fla. 1993) (citations omitted). After section 948.039 was enacted, the Florida Supreme Court reiterated the *Biller* factors and adopted the converse as well, explaining:

> In other words, a condition is valid if it satisfies one of the following *Biller* factors: (1) has a relationship to the crime for which the offender was convicted, (2) relates to conduct that is criminal in nature, or (3) requires or forbids conduct that is reasonably related to future criminality.

*Villanueva v. State*, 200 So. 3d 47, 53 (Fla. 2016) (finding probation condition that defendant attend mentally disordered sex offender therapy invalid when jury found defendant guilty only of lesser included offense of misdemeanor battery).

We applied the three *Biller* factors in *Benson v. State*, 361 So. 3d 944, 946–47 (Fla. 1st DCA 2023), to reverse special conditions imposed on a defendant charged and convicted of violating his pretrial release for domestic violence. Benson was not charged with or convicted of domestic violence battery, but only with violation of his pretrial release after his arrest on a complaint of domestic violence. So he could not have conditions of probation imposed as if he had committed domestic violence battery. *Id.* at 947.

Applying the *Biller*/*Villanueva* factors to special condition 22 here requiring parenting classes, such classes have no relation to the crime for which Parker was convicted. The murder of Jennings by Phillips at Parker's direction did not involve any act of parenting by Parker. That their child was in Jennings' home during the murder does not suggest that Parker's parenting skills related to the murder. Special condition 22 does not satisfy the first *Biller*/*Villanueva* factor requiring a relationship to the crime of which the offender was convicted.

The second *Biller*/*Villanueva* factor is also not satisfied as to special condition 22 because nothing in the record shows that Parker's parenting of her daughter was itself criminal or that the required parenting classes relate to Parker's criminal acts while parenting her daughter. And the third *Biller*/*Villanueva* factor is

also not met.  Requiring Parker to complete parenting classes in the distant future, once she is released from her 53-year incarceration and long after the daughter reaches majority, can have no bearing on any future criminality whether involving Parker's daughter or otherwise.

The State concedes that Parker's completion of parenting classes during her probation, after completion of her lengthy incarceration, will be moot as to the daughter.  Nothing in the record suggests that Parker will have any access to children in a parenting capacity when she begins her probation supervision.  Because special condition 22 does not satisfy any of the *Biller*/*Villanueva* factors, the order of probation must be remanded for the trial court to strike the condition.  *See Benson*, 361 So.3d at 947.

Considering special condition 20, prohibiting any contact between Parker and her daughter for life, it cannot be said that Parker's contact with "the victim's family" has no relation to the murder of Jennings at the home where both he and the daughter lived.  As the "next of kin of a homicide victim," Jennings' child is a "victim" under the Florida Constitution.  *See* Art. I, § 16(11)(e).  While contact between Parker and her daughter is not "itself criminal" for purposes of the second *Biller* factor, and prohibiting such contact in the future is not reasonably related to Parker's future criminality for the third factor, special condition 20 was not an abuse of the trial court's discretion under the first *Biller* factor.  The condition of no contact with the deceased victim's family, including the daughter of the deceased victim, has "a relationship" to the crime for which Parker was convicted.  As stated in *Villanueva*, the satisfaction of one *Biller* factor is enough to uphold a special condition of probation.  *Villanueva*, 200 So. 3d at 53.  Parker fails to demonstrate an abuse of the sentencing court's discretion in imposing special condition 20.

For the reasons set forth above, the term-of-years sentence is affirmed.  The order of probation is remanded for entry of an amended order.  Upon the State's partial concession of error for special conditions 19, 22, and 23, and this court's determination that special condition 22 is unrelated to the offense, the trial court is directed to enter an amended order of probation.  The amended

order must reflect its oral pronouncement for special condition 19 limiting the GPS monitoring to the first six months of probationary supervision. The trial court must strike special condition 22 that required completion of parenting classes. Special condition 23 must be amended to change the requirement that Parker "complete" her GED or vocational training and replace it with the requirement that she "make a good-faith effort to obtain a GED or vocational training." § 948.037(1), Fla. Stat.

AFFIRMED in part, REVERSED and REMANDED in part with instructions.

ROBERTS and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Jessica J. Yeary, Public Defender, and Megan Long, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Heather Flanagan Ross, Assistant Attorney General, Tallahassee, for Appellee.

9